May it please the court, Ada Flager on behalf of Louis Handy, who is present in the courtroom today. The district court considered the relevant sentencing factors and determined that supervised release was not appropriate. Then upset by courtroom conduct he saw as disrespectful, the judge did an abrupt about-face and imposed a new term of supervision as punishment for that in-court conduct, hoping that it would teach Mr. Handy a lesson about respecting the judge and the law. We raise two objections to this. First, that the imposition of a new term of supervised release was plainly unreasonable because it was based on the retributive sentencing factors in 3553A2A. And second, that the imposition of punitive supervised release to vindicate the authority and dignity of the court was de facto criminal contempt imposed without the protections and sentencing limitations afforded. The standard of review for the second issue, for the contempt issue, is plain error. But the standard of review for the plainly unreasonable challenge is just the plainly unreasonable standard. That's a preserved issue. But what was the objection that was made? Wasn't it just a general objection to the imposition of the supervised release? Was there any specific objection because it was given on improper ground? There are two answers to that, Your Honor. First, there is the general objection made after the imposition of supervised release. And in response to that, the judge says, for all the reasons given, I can understand that. That's on page 222 of the record, which is referencing back to the arguments of counsel previously made, discussing that the purposes of supervised release is not for punishment but for rehabilitative purposes. And also we would argue that the issue, to the extent that this Court finds the issue not adequately preserved by that objection, to note the context of the — the context in which Mr. Cheney is objecting. This is a tremendously heated part of the proceedings. The judge has interrupted him a couple of times during the course of his objection here, and we would argue that there was not an opportunity to continue on and that it was not prudent for him to continue to poke at this sensitive topic. So you — because the judge said, I understand that, you think he's referring back to the earlier argument? When he says — What makes you think that? He says, and for the reasons given. So that is clearly a reference to the reasons that came before. So it comes back to the arguments made by counsel about the purposes of supervised release as well as the reasons that it wouldn't be appropriate in this case. And on page 214 of the record, where counsel argues that the purpose of supervised release is not to punish — or, sorry, the purpose of revocation is not to punish but to increase the likelihood that a person is going to make a smooth transition. And counsel contrasts that with the previous paragraph talking about how sometimes supervised release ends up being a situation where I need to get your attention or I need to do something to make sure you understand that I'm in control. It's — yeah, I mean, there's a tight little combine going on here because Miller and A2A is counterintuitive a little bit, and therefore it does help to say I'm making a Miller objection here. And especially as to disrespect to the law, that's the one that doesn't tie to the original sentence. So you can't have disrespect as an enhancement ever. Those particularities weren't brought up. You're right, Your Honor, that Miller itself was never actually mentioned. Was A2A mentioned? Or was even you can't do it for disrespect to the law? It may sound very particularized, but it's important to your argument because you probably lose under plain error with Rivera. Would you — Well, I might disagree with that, Your Honor. But it's a difficult and fit. Again, we would argue that — no, he didn't at any point say — he didn't reference Miller and he did not specifically say it was — it's improper to consider respect for the law. Don't gasp, but help me out conceptually. Miller here — am I right under A2A, the three prohibited factors, the first and the last, understandably say you can't at a revocation sentence enhance for the original offense? Correct. It's surprising to me that disrespect to the law isn't equally limited, right? I don't understand really intuitively why a sentencing judge, if there's disrespect shown during the sentencing hearing, can't say, and I am going to enhance for that reason. Do you have a law that draws that — a case that draws out that distinction? Well, I think, Your Honor, it goes back to the purposes of revocation and of supervised release. You see in the Supreme Court Tapia case, they talk about how the drafting of the Sentencing Reform Act expressly excluded parts of the traditional sentencing factors under — for particular sentencing determinations. And they expressly say that when considering supervised release imposition, Congress has excised any of the retributive factors, and the retributive factors are what they refer to in A2A. So that's why respect for the law would go along with provide just punishment as the — sort of conceptually, those are all retributive things which we have determined are not appropriate in supervised release determinations. Your legal position — I don't want to put words in your mouth, but you'd rather have all this governed by the contempt rule, but that does run into our formal break doctrine that other courts may not agree with, right? Gerizano, the case you probably know I was on, and there was a Judge Dennis dissented, but the dissent would maybe be more the viewpoint for your primary argument that this can only be dealt with contempt. The judge can't sort of switch midstream. But our law pretty much says until the gavel goes down, a judge can adjust a sentence. Fair characterization or not? I think that in certain circumstances, that might be fair, and in fact, in the prior cases in this circuit, that might be fair. In our response to the 28J letter that the government filed, I think we distinguished that we're not arguing that the Court no longer has jurisdiction and thus can't change a sentence based on things that happened in the course of the sentencing proceeding. We're saying that the consideration of this particular conduct, which was clearly, as the judge says, demonstrating his failure to respect the law and disruptive of court proceedings, particularly after the judge had begun announcing the sentence, that that was not related to any of the appropriate sentencing factors here and thus should have been dealt with as a separate contempt proceeding. Not that, our argument is not that it's never permissible. And I think the government cited the Kippers case in their brief, which admittedly is a case rather than supervised release. But in that case, I think that's a good example of when conduct in the sentencing hearing would be an appropriate consideration for the judge to use in crafting a sentence. There, Mr. Kippers, I believe both on the stand and also just in his courtroom conduct, demonstrated a lack of remorse. He demonstrated a continued enmity toward the victims of his crime. So that's related to proper things that the court would be considering in probation revocation. So I think those, that we would contrast that to the conduct here, which is the very heartland of direct criminal contempt hearings. So we don't have to guess at what the judge's dominant factors for imposing a new term of supervised release were. We have the benefit here of knowing what his answer was before this conduct, having considered all of the appropriate 3553A factors, as well as his long history with the defendant. He thought that supervised release was not appropriate. Then, he very clearly changes his mind on page 219 of the record and says, I was going with your lawyer, I wasn't going to do that. And clearly, that demonstrates that the motivation, the dominant factor for imposing the new term of supervised release was the judge's desire to instill a respect for the law, and also to punish for his in-court conduct. The government, in their brief, pointed to several other appropriate factors that they argue could fit these circumstances. And the response to that is, first, that that isn't the issue in Miller. The issue is what the dominant factor that the court was considering was. And second, that the factors that they referenced, deterrence of future criminal conduct, or protection of public safety, are, candidly, quite a stretch for somebody who has interrupted to ask a question of his lawyer and to point out that his violation was a grade C violation and not a new crime. And we don't need to even go that far, because the judge very clearly told us why he was changing his mind and why he was punishing Mr. Handy with a new term of supervised release. The purposes of supervised release being to promote rehabilitation. Everyone in this transcript has already acknowledged that it would be of no further benefit to Mr. Handy. And in fact, their commentary seems to sort of cast it as something of a trap for him to continue to be in supervised release, which demonstrates why it's imposed as a punishment by the district court judge. Turning to the contempt issue. The judge said he was not holding him in contempt, didn't he? I mean, why doesn't that end it? Our argument is not that he expressly held Mr. Handy in contempt. In fact, our argument is that he didn't, but should have dealt with this conduct under that procedure. He does say, I'm not holding him in contempt, but then acknowledges that contempt is exactly what's on his mind and exactly what's motivating him. He says, I almost, I came that close on page 223 of the record. I almost came that close to holding him in direct contempt, but I didn't. The court then goes on to say, you don't earn trust by putting yourself in contempt of court. And then on the next page, 224 of the record, the judge says, as I stated before, I have more than sufficient grounds to hold him in contempt. Our argument is not that he followed all of the procedures of Rule 42 and conducted a summary contempt proceeding. In fact, our argument is the exact opposite, that he did not abide by the strictures of Rule 42, but was in essence conducting such a hearing and punishing pursuant to Rule 42. And the reason that that matters is because criminal contempt is a very narrow exception to all of the due process requirements that we would require in any other criminal proceeding. It's been recognized as necessary for the authority of the court. Of course, a judge needs to be able to control his courtroom. So the summary contempt proceeding allows the judge to engage in what would otherwise be a wholly unconstitutional trial, presided over by the judge without adequate notice, without a jury, those sort of things, and that is narrowly circumscribed for that exact reason. It is a very narrow exception to our general criminal practice, and- The rule would have an asymmetry problem, though, because the whole point of letting the defendant testif- allocute at sentencing is that he can get mitigating credit and get a lesser sentence for remorse and good things. So if a defendant instead chooses to turn his back on the judge, wouldn't that be relevant to his history of characteristics, underlying offense, violates, violates, comes back in? It seems like to tell a district judge, any time he sort of spurns you instead of expresses remorse, you've got to go through the Rule 42 machinery. I think, Your Honor, there might be circumstances where the judge would not need to go through the Rule 42 procedures. Here, it's quite clear that he, the judge, had already considered Mr. Handy's history, his character, had already had Mr. Handy in his courtroom for years previously, and in fact, expressly says that he's basing the sentence, in part, on his history with the defendant, and determines that supervised release is not appropriate. And then goes back and imposes it exclusively on the grounds of his desire to promote respect for the law and provide a punishment for this in-court behavior. I think the distinction, Your Honor, is the purpose of the punishment here. He's punishing, he's imposing a term of supervised release to punish Mr. Handy for this conduct. That is the only thing that happens between the time he says, I'm not imposing supervised release, and the time he says, I am imposing supervised release. If there are no further questions, I'll reserve the remainder of my time. Mr. Kammerer. Good morning, Your Honors. May it please the Court. My name is Dal Kammerer. I represent the United States in this matter. Your Honors, at first, I want to point out something that is very important to the government's argument, is that we have to look at, besides what happened prior to this hearing, what happened after the hearing. Judge Limmel, from the very beginning of this case, after dealing with Mr. Handy for more than five years, always wanted him to obtain a job, to be truthful and obey probation, to get his GED or vocational training, and to participate in orientation and life skills programs, which is precisely what he did after these antics took place in court with Mr. Handy turning his back to the court, etc. Most of the cases, you will notice, that are related to this situation, the Walker case, the Rivera case. You mean he went ahead and complied and benefited from the conditions? Is that in the record? Once Judge Limmel said, you're going to get more time on me, you're saying he then actually complied, and therefore that shows the system worked? No, Your Honor. I'm sorry. Let me rephrase. The point being is that rather than punishing Mr. Handy, we'll look at the record, I think it's on page 258, he could have put Mr. Handy in jail for two years. Rather than do that, he went back to his rehabilitative things that he had done for the past five years, which was simply to try to get Mr. Handy to rehabilitate himself and make a smoother transition into society. This is going towards the argument that he was punished by Judge Limmel. But they're making the tandem argument that it's a TAPIA violation, that not only can you not punish, you also can't add time to rehabilitate for an improper reason. That has to do if it's imprisonment, Your Honor. If you're adding imprisonment for rehabilitation purposes, then that would be clearly an error or a problem under TAPIA. He didn't include any more imprisonment in this case. He just continued his long-lasting process of trying to rehabilitate Mr. Handy. And the cases that we look at in here, where I was going to just a second ago, is most of them deal with Judges A, going above the guidelines, and B, imposing imprisonment on somebody. The case that Your Honor sat on, the Garazano case, was a particularly good example. The guidelines were set at A. After things happened in court, the judge went up, I think it was three years, above the guidelines and imposed a prison sentence, which caused everybody to look at this in a plainly unreasonable sentence in that case. You think TAPIA doesn't apply to increasing the term of supervised release? I don't believe so, Your Honor. I think it's under 3582, 18 U.S.C. 3582, where it specifically says that for imprisonment sentences, that it can't be a rehabilitation, can't be used for, I'm sorry, imprisonment cannot be used for rehabilitation. Under 3553, when we're talking about rehabilitation, we're talking about supervised release. We excise that out. We excise that part. I think it's part A. So are you saying that even if Mr. Cheney had objected and said, you can't give him supervised release because of disrespecting the law, your position is Judge Limmel could have said, yes, I can? For disrespecting the law, no. I still believe that he, maybe I'm misunderstanding the question, Your Honor. I still believe that under 3553A, that he can't impose disrespect for the law or a punitive measure when revoking supervised release. I agree with that. Judge Limmel said, he used the phrase disrespect the law. That's correct, Your Honor, but he also used other phrases. And you get into the dominant secondary comparison. That's correct. It's pretty hard to look at this record and say one was more dominant and one was more secondary. And that's where I bring to the argument where I was trying to make a point between what happened prior and afterwards, Your Honor, is that what the judge was looking at is what he has always looked at, which was rehabilitative, non-punitive measures, and it shows by what he did. He imposed supervised release on Mr. Handy, and it just had those elements to it. There was no incarceration. There was nothing punitive about imposing an additional year of supervised release. I think that when you look at the entire picture here to try to determine what Judge Limmel was doing here, and besides twice saying that he wasn't, well, he said he wasn't in contempt. From the standpoint of the defendant, that's highly punitive because if this guy's got a history of not being able to comply, it's going to get him back in court. It's a little hard to decide. But anyway, go ahead. I understand the defendant's argument. Are you not pressing that this should be reviewed for plain error? I am. Where we don't have to parse out what's dominant? No, I do, and I do have a position on that. No, I do say it should be plain error. And the reason, first of all, to discuss what happened on record, page 222, which is the first we have the general objection that happened at the end, and I think we all agree it was pretty general, is the tie back to statements that Mr. Chaney made prior, made prior to that. And the, at that time you have to realize when you look at the record, he's talking about arguing about imprisonment at that point. He's not talking about supervised release. And it's logical because at that point of the time he made those comments, Mr. Handy had not turned his back on the court, had not interrupted the court. Those things had not happened yet. So once we get to the end of the record after these in-court behavior took place. First exchange. I'm not clear in my mind what the exchange was earlier that they refer back to. Let's see if I can find the record site, Your Honor. Substance of it is that the defense says that prior reasons was regarding the imprisonment, not that the term of supervised release would be under 3553A. During the original report, Mr. Chaney was explaining to the court that the purposes of this is not punitive and asking him not to impose a term of imprisonment, which kind of goes to my argument as to what we have to look at, what Judge Lamel did before and after this sentencing hearing. Once we get to the in-courtroom behavior, I think it was incumbent upon the defense to specify that it was either 3553A2A or it was a Miller objection because at that point the judge could have, as he did with clarifying himself on the contempt issue, could have very, very easily rectified the record at that point and said, clarified that issue, would have given him a chance to do that, which he's been robbed of now that we're here and under this Court's cases in Pelletier and actually in the Kippers case there was a general objection made to the same extent and this Court says that we go to plain error. Your Honors, with regard to the dominant factors in this case, I'd like to call back to your attention that Judge Lamel's word choices in this case, he did say in that point punishment towards the beginning. It shouldn't be viewed in a vacuum. I think that that's not what Rivera stands for, that the Court has to stand back and look at this and try to figure out what the dominant reasons for this sentence were. And if the dominant reason is what it had been from the very first day, was not to punish Mr. Handy but to try to get him to get a job, get some sort of training and become a productive member of society, which he continually refused to do. It's important to recognize at that point that the judge could have, if he was trying to punish him, could have imposed instead of 11 months of imprisonment, he could have imposed two years of imprisonment. He chose not to do that. He chose to go where, as some of the other cases that surround this did, we had an upward variance in most of them and we sentenced to prison. He didn't do that. He just continued to try to get Mr. Handy to come into society properly. Contempt is not an issue in this case as far as I'm concerned, Your Honor, because the judge said it twice, said it wasn't contempt. It was contemptible behavior for sure. But rather than punish him, he just decided to continue to keep trying to rehabilitate him. Mr. Speaker's point on that is a fair one to make, which is even though the judge says it wasn't contempt, I think I'm reading her words as saying that he really short-circuited a contempt proceeding and imposed it just right there at the moment rather than giving the usual kind of notice that we would have for a full-blown contempt hearing. Yes, Your Honor. Well, I'd like to note at the point in the record, it's at page 219, where the defendant actually turns his back to Judge Lamell and this series of comments starts to come forward. Right after turning it back, Judge Lamell said, that showed me something about you that the court initially wanted to discount. He also said that right after saying twice, that that is further evidence of your inability to further evidence of his behavior. Both of those comments refer back to not just punishing him for this particular issue, this particular bad behavior in the courtroom, but it ties into my argument about either sides of this hearing and Judge Lamell himself considering this man's. It gave the judge a second to stop, think about what he was saying, observe what was happening in his courtroom, and reconsider to change his mind. Realizing as in Kippers, the judge had made a mistake, I think this court has said in the opinion, made a mistake. In that same hearing, decided to rethink whether that was a good decision that he had made. I don't think that you read into this record. To say that it's punishment and fits under contempt or fits under the 3553A and Miller exclusions is to isolate Judge Lamell's comments in a vacuum. The government was silent throughout the exchange? I wasn't trial counsel in that case, Your Honor, yes. The record, no. Well, during that exchange, no. The government attorney did not say anything. No objections were made or anything like that. But looking at it, I don't know that there was a reason for him to have objected at that point. In conclusion, Your Honors, unless anybody has any other questions for me, respectfully, a failure by Judge Lamell to respond immediately and decisively to what happened in his courtroom is substantially more likely to impugn the public reputation of the judiciary proceedings. Judge Lamell did exactly what you would want him to do. He saw, he observed, he stopped, and he reconsidered. Not allowing a judge to change his mind, looking at this type of situation unfolding behind his eyes, would be more of an affront to the public integrity of a judicial proceeding. For these reasons, we ask that the district court's sentence be affirmed. Thank you, Your Honors. Thank you, sir. Back to you, Mr. Lear. To respond on a couple of points. First, the argument that supervised release was not intended to be punitive in this case. Looking at page 216 of the record, the judge says, I do agree with Mr. Cheney, that this is before the imposition of a new term, that any recommitment to supervised release would not have any practical benefit for his client. Supervised release in this case was the thing the judge had at hand to punish Mr. Handy. He had already announced an 11-month prison sentence, which was, in fact, the top of the guidelines. The government also argues that, seeming to argue that the judge can reconsider his sentence. Our argument is not and has never been that a judge can never reconsider his sentence in the midst of a sentencing hearing. Our argument is that when the judge reconsiders his sentence and adds punishment based on factors which he is not permitted to add benefit, punishment based on, that is a violation. So the arguments about further evidence or things I was trying to discount about you, it's clear still that before the imposition, the judge decided there should be no imposition of supervised release. These are the only things that are considered, and then the judge decides to impose a new term of supervised release. And he tells us why he did it. Further evidence of your failure to respect the law, you've been through court too many times not to know you're not to speak when the judge is speaking. Turning your back on me does not help either. And finally, the government seems to concede that this is potentially contemptible behavior. Had this been a contempt hearing, there would be several provisions that potentially would apply and provide rights to Mr. Handy, including that potentially summary contempt proceedings might not be available. Summary contempt proceedings are not always available where the contempt is directed at the court. The judge can be recused in those situations. So Mr. Handy would have the benefit not just of a contempt order reciting particular facts, but also of potentially a neutral arbiter in this case. Here, the imposition of a new term of supervised release, which everyone here seems to recognize is a potentially insurmountable hurdle for Mr. Handy, is clearly punishment in the guise of a de facto contempt of court order. I guess one question. So what's the limiting principle here? Because defendants that are back before revocation sentencing are always the ones that have shown an inability to adhere to a sentence. So when a judge does impose orally the sentence, if a defendant then is scornful right there publicly in court, what are you saying is the restraining authority a sentencing judge has? They can't say, well, now I just don't think you have adhered. This is further proof of everything I've done, so there's got to be more. How can he do that? The distinction doesn't turn on whether or not the conduct is within court or outside of court. The limiting principle here is the Miller-Tapia principle of — But on my facts, what authority does a sentencing judge have? Only through Rule 42? Or through the permissible 3553A factors. So that's the distinction between this case and, again, the Kippers case. Again, a probation case, but circumstances such as that, where the conduct in court went to factors the judge is allowed to consider in sentencing. Here, whatever the conduct was, it went to factors that the judge was not permitted to consider. The Congress has decided it should not be part of the decision whether to impose supervision, and expressly has done so because of the purpose of supervision, which is not retributive. Thanks. All right. Thank you very much. Thank you for your argument.